# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

WEBSTER CAPITAL FINANCE, INC.,
f/k/a CENTER CAPITAL CORPORATION,

*Plaintiff,*

vs.

Case No. 12-2290-EFM

DANIEL NEWBY, et. al.,

*Defendant.*

## MEMORANDUM AND ORDER

In this action, Plaintiff Webster Capital Finance, Inc. f/k/a Center Capital Corporation ("Webster Capital") seeks to enforce personal loan guaranties against Defendants Daniel Newby and Thomacine Newby. This case comes before the Court on Plaintiff's Motion for Summary Judgment (Doc. 48). For the reasons stated below, the Court grants Webster Capital's motion.

### I. Factual and Procedural Background[1]

Webster Capital is a Connecticut corporation that provides financing to various business ventures. Defendants Daniel Newby and Thomacine Newby are residents of Kansas City, Missouri, who operate Ottawa Bus Service, Inc. ("Ottawa Bus"), a Kansas corporation. On February 19, 2002, Webster Capital and Ottawa Bus entered into Master Loan and Security

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

Agreement No. 31505 (the "Master Loan Agreement"), which provided the terms under which Webster Capital would extend credit and financing to Ottawa Bus. Section 6 of the Master Loan Agreement provides nine disjunctive paragraphs describing various events of default, including:

>   (i)   The failure to pay any installment(s) due hereunder or under one or more of the Schedules on the due date therefor;
>
>   (ii)  The breach of any term covenant, warranty or representation contained in this Agreement which is required to be performed or observed by Borrower and which failure is nor cured to Lender's reasonable satisfaction within the (10) days after the giving of notice by Lender to Borrower of such failure;
>
>   . . . .
>
>   (iv)  With respect to the Borrower, the Equipment or a substantial part of Borrower's assets: . . . (B) a petition in Bankruptcy or under any similar law is filed.[2]

This section also provides that "[u]pon the occurrence of an Event of Default, the Obligations under any or all Schedules may, at the option of Lender and without demand, notice, or legal process of any kind, be accelerated, and shall immediately become due and payable."[3]

To secure payment under the Master Loan Agreement and the various loan schedules, Defendants each executed a Continuing Guaranty on February 26, 2002 (the "Continuing Guaranties").[4] In these documents, Defendants personally guaranteed Ottawa Bus's "prompt payment of all indebtedness, including, but not limited to, principal, accrued interest, costs, late charges, out of pocket expenses, and attorneys' fees"[5] due under the Master Loan Agreement or

---

[2] Master Loan Agreement, Pl.'s Ex. A, Doc. 49-2, at ¶ 6.

[3] *Id.*

[4] Defendants issued their Continuing Guaranties in favor of Center Capital Corporation, Webster Capital's predecessor.

[5] Daniel Newby Continuing Guaranty, Pl.'s Ex. M, Doc. 49-14, at 1; Thomacine Newby Continuing Guaranty, Pl.'s Ex. N, Doc. 49-15, at 1.

any related obligations. Defendants' guaranties gave rise to "an absolute and unlimited guaranty of payment and performance, not a guaranty of collection, and Guarantor agrees to pay and/or reimburse [Webster Capital] for any attorney's fees and out of pocket costs incurred in connection with the collection on or enforcement of this Guaranty."[6]

Pursuant to the Master Loan Agreement, Ottawa Bus entered into at least six loan schedules, whereby Webster Capital financed the purchase of equipment and took a purchase money security interest in the collateral. Each of these loan schedules required Ottawa Bus to pay the indebtedness in monthly installments. In July, August, and September of 2010, Ottawa Bus failed to pay monthly installments as required by the Master Loan Agreement and the loan schedules. On September 2, 2010, Webster Capital sent Defendants a Notice of Default, which provided:

> The Borrowers and/or Guarantors are currently in default by reason of their failure to pay the monthly installments due July 1, 2010 through September 1, 2010 and accrued late fees as provided for in the Agreement. Accordingly, [Webster Capital] is accelerating the indebtedness pursuant to the terms of the Agreement. [Webster Capital] hereby demands payment of such accelerated balance, together with any and all applicable sales tax and late fees due from the Borrowers and/or Guarantors.[7]

Defendants allege that after receiving the Notice of Default, they paid the installments due for July, August, and September or 2010.

On November 22, 2010, Ottawa Bus filed a voluntary petition for bankruptcy relief under Chapter 11. Webster Capital filed this action on May 15, 2012, asserting that Defendants improperly refused to honor their Continuing Guaranties upon Ottawa Bus's default and bankruptcy.

---

[6] *Id.*

[7] Notice of Default, Pl.'s Ex. O, Doc. 49-16, at 1.

## II. Legal Standard

### A. Local Rules for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[8] A fact is material when it is essential to the claim, and issues of fact are genuine if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[10] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[11] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12] The court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[13] Although neither party complied with local rules regarding dispositive motions, the Court will consider the pending motion and response to preserve judicial resources associated with trial.[14]

---

[8] Fed. R. Civ. P. 56(a).

[9] *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[11] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[12] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[14] The requirements regarding motions for summary judgment in the District of Kansas are set forth in D. Kan. Rule 56.1. Under that rule, memoranda or briefs in support of a motion for, or in opposition to, summary judgment "must begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies." D. Kan. Rule 56.1. Neither party's memoranda complied with this rule. Rather, Webster Capital's memorandum in support of its motion provided a lengthy narrative statement of facts and

**B. Controlling Law**

"A federal court sitting in diversity applies federal procedural law and the substantive law that would be applied by the forum state."[15] "[W]here a contract contains a choice-of-law clause, the court will apply the forum state's choice-of-law rules."[16] "Under Kansas law, parties to a contract may select the law that will govern interpretation of their agreement, and Kansas courts will generally honor that choice."[17] Here, the Continuing Guaranties contain a choice-of-law provision, which states that the parties' agreement shall be governed by Connecticut law. Because this case arises under this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), substantive issues are governed by Connecticut law while federal law governs procedural issues.[18]

### III.    Analysis

Webster Capital alleges that Defendants breached their contractual obligations under the Continuing Guaranties. Under Connecticut law, a guaranty is a type of contract.[19] "The elements of a breach of contract action are the formation of an agreement, performance by one party,

---

contained no numbered paragraphs. As not to be outdone in non-compliance, Defendants, in their memorandum in opposition to Webster Capital's motion, appear to have copied and pasted Webster Capital's statement of facts. But on closer examination of Defendants' statement of facts, where it serves their cause, Defendants omit, insert, or change key words within Webster Capital's narrative. The Court disapproves of each party's failure to comply with local rules, and admonishes both parties to examine the relevant local rules before filing documents with this Court.

[15] *Evans v. Orion Ethanol, Inc.*, 2011 WL 2516929, *1 (D. Kan. June 23, 2011) (citing *Burnham v. Humphrey Hospitality REIT Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005)).

[16] *Id.* (citing *MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1260 (10th Cir. 2006)).

[17] *Id.* (citing *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005)).

[18] *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

[19] *Garofalo v. Squillante*, 760 A.2d 1271, 1275 (Conn. Ct. App. 2000).

breach of the agreement by the other party and damages."[20] Neither party disputes that the Continuing Guaranties constitute valid contracts or that Webster Capital adequately performed its obligations by extending credit and financing. However, the parties dispute whether Ottawa Bus defaulted under the Master Loan Agreement and loan schedules, thereby giving rise to Defendants' liability under their guaranties.

**A. Ottawa Bus's Default**

Webster Capital argues that Ottawa Bus failed to pay various monthly installments, giving rise to an event of default that invoked Defendants' liability under the Continuing Guaranties. Section 6(i) of the Master Loan Agreement expressly provides that "failure to pay any installment(s) due hereunder or under one or more of the Schedules on the due date therefor"[21] constitutes an event of default. It is uncontroverted that Ottawa Bus failed to pay Webster Capital monthly installments due in July, August, and September of 2010. Accordingly, the Court finds that Ottawa Bus's failure to pay these monthly installments constitutes an event of default under the plain language found in Section 6(i) of the Master Loan Agreement.

Webster Capital also argues that Ottawa Bus's bankruptcy filing constitutes a second event of default that is independently sufficient to invoke Defendants' liability under the Continuing Guaranties. The Continuing Guaranties and Section 6(iv) of the Master Loan Agreement both provide that any bankruptcy filing by Ottawa Bus shall constitute an event of default.

Defendants assert that these provisions are unenforceable, arguing that 11 U.S.C. § 365(e)(1) invalidates *ipso facto* clauses that terminate or modify a contract upon bankruptcy

---

[20] *Seligson v. Brower*, 952 A.2d 1274, 1277 (Conn. Ct. App. 2008).

[21] Master Loan Agreement, Pl.'s Ex. A, Doc. 49-2, at ¶ 6(i).

filing. However, Congress expressly limited the scope of 11 U.S.C. § 365(e)(1) to "an executory contract or unexpired lease,"[22] neither of which apply in this case. Additionally, the prohibition of *ipso facto* clauses relates to their enforcement against bankruptcy debtors like Ottawa Bus, not against third-party guarantors like Defendants.[23] Therefore, the Court finds that Ottawa Bus's bankruptcy filing gave rise to a second event of default under the Continuing Guaranties and Section 6(iv) of the Master Loan Agreement.

The Master Loan Agreement provides that in the event of default, Webster Capital may accelerate any and all obligations, such that the obligations "immediately become, due and payable."[24] Webster Capital argues that it exercised that option on September 2, 2010, when it sent its Notice of Default to Ottawa Bus. Defendants argue that the Notice of Default did not operate to accelerate the obligations, but merely threatened acceleration if Ottawa Bus failed to make the requisite payments. A plain reading of the Notice of Default refutes Defendants' assertion. The notice explicitly states that Ottawa Bus is "currently in default," and "[a]ccordingly, [Webster Capital] *is* accelerating the indebtedness."[25] Therefore, having found that Ottawa Bus's failure to pay monthly installments gave rise to an event of default, the Court finds that Webster Capital properly exercised its right to accelerate the indebtedness when it sent the Notice of Default on September 2, 2010.

---

[22] 11 U.S.C. § 365(e)(1)(B) ("[A]n executory contract or unexpired lease of the debtor may not be terminated or modified . . . solely because of a provision in such contract or lease that is conditioned on . . . the commencement of a case under this title.").

[23] *See Days Inn of Am., Inc. v. Hotel Group, Inc.*, 739 A.2d 280, 282-83 (Conn. Ct. App. 1999).

[24] Master Loan Agreement, Pl.'s Ex. A, Doc. 49-2, at ¶ 6.

[25] Notice of Default, Pl.'s Ex. O, Doc. 49-16 (emphasis added).

Defendants argue that Webster Capital's allegations of default and acceleration are misplaced because Ottawa Bus cured any alleged default when it paid past-due installments after receiving Webster Capital's Notice of Default. The Court rejects Defendants' argument for two reasons. First, the Court finds that Ottawa Bus's bankruptcy filing constitutes an event of default that is independently sufficient to invoke Defendants' Continuing Guaranties regardless of whether Ottawa Bus paid its monthly installments. Second, the Master Loan Agreement includes no provision granting Ottawa Bus an unqualified right to cure delinquent payments. While Defendants point to a ten-day notice provision under Section 6(ii) and a sixty-day notice provision under Section 6(iv), these sections relate to events of default that are distinct from the one articulated in Section 6(i). These provisions are listed with a disjunctive posture, and the Master Loan Agreement provides that "[t]he occurrence of *any one* or more of the following shall constitute an 'Event of Default.' "[26] For these reasons, the Court finds that Ottawa Bus did not cure the two events of default by paying the past-due installments it owed for July, August, and September of 2010.

Having found that Ottawa Bus defaulted under the Master Loan Agreement, that Webster Capital properly accelerated the indebtedness, and that Ottawa Bus's past-due payments were insufficient to satisfy its then-accelerated obligations, the Court examines Defendants' corresponding liability as guarantors. The Continuing Guaranties provide that Defendants guarantee the "prompt payment of all [Ottawa Bus's] indebtedness."[27] Additionally, the guaranties provide that, in the event of default by Ottawa Bus, Webster Capital need not proceed

---

[26] Master Loan Agreement, Pl.'s Ex. A, Doc. 49-2, at ¶ 6.

[27] Daniel Newby Continuing Guaranty, Pl.'s Ex. M, Doc. 49-14, at 2; Thomacine Newby Continuing Guaranty, Pl.'s Ex. N, Doc. 49-15, at 2.

against Ottawa Bus before seeking direct recovery from Defendants. Therefore, when Ottawa Bus defaulted by failing to pay monthly installments and by filing a petition for bankruptcy protection, Defendants became personally liable for the accelerated balance of Ottawa Bus's obligations to Webster Capital. The record reveals that Webster Capital made a demand for payment, but that Defendants have not satisfied Ottawa Capital's obligations to Webster Capital. Defendants' refusal to make prompt payment of Ottawa Bus's accelerated indebtedness constitutes a breach of Defendants' Continuing Guaranties. Because the uncontroverted facts demonstrate that Webster Capital is entitled to judgment as a matter of law with respect to its claims for breach of guaranty, the Court grants Webster Capital's motion for summary judgment.

**B. Webster Capital's Damages**

Webster Capital alleges that it is entitled to damages in a total amount of $425,834.69, less any and all Plan payments made in Ottawa Bus's bankruptcy after May 3, 2013, the date that Webster Capital filed its dispositive motion. According to Webster Capital, this figure represents principal and interest, late charges, miscellaneous operating fees, and attorneys' fees owed by Defendants. The Court will analyze each category of damages in turn.

First, Webster Capital claims that Ottawa Bus has not yet paid the principal and interest amounts due under the relevant loan schedules.[28] Through amortization tables and the sworn testimony of its Vice President, Amy Levy, Webster Capital demonstrates that Defendants' principal and interest obligations were $345,306.07, as of May 3, 2013. Defendants do not present any evidence to controvert this fact, and instead reiterate their unsuccessful argument that

---

[28] The relevant loan schedules provide that in the event of default, interest on the outstanding principal balance shall be recalculated at a rate of eighteen percent per annum. *See, e.g.,* Loan Schedule No. 5, Pl.'s Ex. E, Doc. 49-6, at 2.

Ottawa Bus cured any alleged default. Accordingly, upon review of the record, the Court finds that Webster Capital is entitled to damages for principal and interest payments in the amount of $345,306.07, less any amounts paid through the bankruptcy Plan after May 3, 2013.

Second, Webster Capital requests an award of $21,188.78, consisting of miscellaneous operating fees in an amount of $267.00, and late charges in an amount of $20,921.78. The Continuing Guaranties expressly provide that, in the event of default, Defendants shall be liable for the "prompt payment of all indebtedness, including, but not limited to, principal, accrued interest, costs, late charges, out of pocket expenses, and attorneys' fees, now due or hereafter becoming due to [Webster Capital] in connection with the Instruments or collection thereon."[29] In support of its claim, Webster Capital submits sworn testimony and refers to its itemized Proof of Claim submitted in the Ottawa Bus bankruptcy. Defendants provide no evidence or argument to controvert Webster Capital's calculation or entitlement to damages. Accordingly, the Court finds that Webster Capital is entitled to an award of $21,188.78 relating to late charges and fees.

Third and finally, Webster Capital argues that it is entitled to attorneys' fees. "The general rule of law known as the 'American rule' is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception."[30] Connecticut generally adheres to the American rule,[31] but maintains an exception for specific contractual terms providing for the recovery of attorney's fees and costs.[32] Because the Continuing Guaranties unambiguously provide that Defendants will be liable for the

---

[29] Daniel Newby Continuing Guaranty, Pl.'s Ex. M, Doc. 49-14, at 2; Thomacine Newby Continuing Guaranty, Pl.'s Ex. N, Doc. 49-15, at 2.

[30] *Rizzo Pool Co. v. Del Grosso*, 689 A.2d 1097, 1105 (Conn. 1997).

[31] *Id.*

[32] *Id.*

attorneys' fees incurred in collecting the indebtedness due to Webster Capital, the Court finds that Webster Capital is entitled to an award for attorneys' fees reasonably incurred in this action.

Webster Capital has provided sworn testimony and invoices from its attorneys indicating that as of May 3, 2013, it incurred legal fees in an amount of $59,339.84. Because the Court anticipates that Webster Capital will seek to recover attorneys' fees incurred after May 3, 2013, and because Fed. R. Civ. P. 54(d) provides that claims for attorneys' fees shall be made by motion *after* judgment is entered,[33] the Court refrains from awarding any specific amount of attorneys' fees at this time. The Court directs Webster Capital to submit its motion for attorneys' fees pursuant to Fed. R. Civ. P. 54(d)(2)(B).

**IT IS ACCORDINGLY ORDERED** this 2nd day of August, 2013, that Plaintiff's Motion for Summary Judgment (Doc. 48) is hereby GRANTED.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[33] Fed. R. Civ. P. 54(d)(2)(B)(i) (providing that motions for attorneys' fees shall be filed no later than fourteen days after the entry of judgment).